**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

**DEMETRIS AUNDREY VEAL, SR.,**

      **Plaintiff,**

**vs.**                           **Case No. 1:17cv265-MW/CAS**

**NANCY A. BERRYHILL, Deputy
Commissioner for Operations,
Social Security Administration,[1]**

      **Defendant.**

_____/

## REPORT AND RECOMMENDTION

      This is a Social Security case referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.2(D).  It is now before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Commissioner of the Social Security Administration (SSA) denying Plaintiff's applications for a period of disability and Disability Insurance Benefits (DIB) under Title II of the Social Security Act (Act) and Supplemental Security Income (SSI) under Title XVI of the Act.  After

---

[1] The Position of Commissioner of Social Security and Deputy Commissioner of Social Security are vacant.  Ms. Berryhill is performing the delegable duties and functions of the Commissioner of Social Security.

careful consideration of the record, it is recommended that the decision of the Commissioner be affirmed.

## I. Procedural History and Facts

On June 26, 2014, Plaintiff filed an application with the Social Security Administration for a period of disability and Disability Insurance Benefits (DIB) pursuant to Title II of the Social Security Act.  Tr. 71.[2]  On July 9, 2014, he filed an application for Supplemental Security Income (SSI) pursuant to Title XVI of the Social Security Act.  *See* Tr. 260.  He alleged disability beginning November 29, 2012, based on back problems, insomnia, leg and foot pain, and depression.  Tr. 71.  A hearing was held on August 1, 2016, before Administrative Law Judge (ALJ) William H. Greer.  Tr. 33-48.  Plaintiff appeared with counsel and testified, and impartial vocational expert Jackson C. McKay also testified.  On August 25, 2016, a decision was issued finding Plaintiff was not disabled.  Tr. 16-26.  The Appeals Council denied review on August 25, 2017.  Tr. 1-4.

On October 24, 2017, Plaintiff, appearing through counsel, filed a complaint for judicial review pursuant to 42 U.S.C. §§ 1381, *et seq.,* and 42 U.S.C. § 405(g).  *See* ECF No. 1.  Respondent filed an answer on January

---

[2] Citations to the transcript/administrative record (ECF No. 10) shall be by the symbol "Tr." followed by a page number that appears in the lower right corner of each page.

11, 2018, ECF No. 9, and both parties filed memoranda in support of their positions.  ECF Nos. 14, 15.

### A.  The Hearing

At the hearing held August 1, 2016, before ALJ Greer, Plaintiff, age 40, testified that he was using a walker that he received in 2012.  Tr. 36.  On a good day, he testified, he will walk with a cane, but due to falling, he has been using the walker more recently.  *Id.*  He dropped out of school in the ninth grade but received a GED several years later.  He lives with his ten-year-old son.  Tr. 37.  He testified he last worked in 2010 as a welder/carpenter at Southeast Employee Leasing.  Prior to that, he worked as a fast food worker at McDonald's and Checkers, a temporary construction worker, a carpet cleaner, an amusement park machine operator, and a heavy equipment operator.  Tr. 37-39.

Plaintiff testified that he was injured on the job but continued to work.  He said his injury progressed and he got hurt again in 2010, and his employment ended.  He began receiving injections in his back and physical therapy until his insurance ran out.  Tr. 40.  Due to his degenerative disc disease, he had spinal surgery fusion at L5-S1 in 2012.[3]

---

[3] *See* Tr. 358-73.

Plaintiff testified he is getting worse and experiencing nerve problems in his left leg.  He said he cannot bend or squat, or lift anything heavy.  *Id.* He described his daily pain level at eight to ten without medication, and he only takes over-the-counter medication due to concern with addiction. Tr. 41, 40, 46.  He recently saw a physician at Shands who ordered an MRI after his physical therapy, and referred him to the Spine and Sports Institute for four to five months of therapy.  Tr. 41.  He testified he was not willing to have another back surgery at this point.  *Id.*

On a good day, he said, he can "stand up, you know, 20 minutes walking around" at one time, but must use a walker and cane.  Sometimes his left leg totally gives out.  *Id.*  He testified his doctor ordered a back brace for him to help support his back, which he wears essentially all the time, and that he could "sit fine as long as I'm sitting straight up."  *Id.* Plaintiff testified his back pain makes it hard to concentrate and deters his thinking.  Tr. 42.

At home, he sits up straight a lot.  Tr. 41.  He washes dishes, but does not cut the grass or do yard work.  He has an adult son who takes him and his ten-year-old to the park every other day or so in the summertime. He said he cannot drive because of the status of his license and because he does not think it is a good idea with this lower body strength.  Tr. 43.  He

finds it difficult to sleep comfortably, especially with the brace, unless he is medicated.  He said he does lie down a lot during the day when he is not sitting.  Tr. 44.  He testified that other problems that prevent him from working include nerve problems and weakness in his left hand after it was injured in 1999 or 2000.  Tr. 44-45.

Impartial vocational expert Jackson C. McKay, testified that Plaintiff's prior work fell into the category of forklift operator, DOT code 921.683-050, medium, SVP 3, semiskilled; construction worker I, DOT code 869.664-014, heavy, SVP 4, semiskilled; carpet cleaner, DOT code 369.384-014, medium, SVP 5, skilled; and fast food worker, DOT code 311.472-010, light, SVP 2, unskilled.[4]  Tr. 46.  The vocational expert was presented with a hypothetical scenario assuming a person of the same age, education, and experience as Plaintiff, who can sit up to seven hours a day, up to one

---

[4] DOT refers to the Dictionary of Occupational Titles (4th Ed., Rev. 1991), which is one of the examples of sources that the ALJ may rely on for job information.  *See* SSR 00-4p; 20 C.F.R. § 404.1566(d).  The ALJ may also rely on a vocational expert or other specialist.  *See* § 404.1566(e).  "[SVP] is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."  Dictionary of Occupational Titles (DOT) (4th ed., rev. 1991), Appendix C: Components of the Definition Trailer, § II, Specific Vocational Preparation (SVP), 1991 WL 688702.  An SVP of 2 allows for "[s]hort demonstration only; SVP of 3 allows for preparation time of "[o]ver 1 month up to and including 3 months;" SVP of 4 allows for "over 3 months up to and including 6 months."  *Id.*  Semi-skilled work is work that needs some skills but does not require doing the more complex work duties.  20 C.F.R. § 404.1568(b).  "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."  20 C.F.R. § 404.1568(a).

hour at a time; stand and walk up to two hours a day, up to fifteen minutes at a time; lift up to ten pounds occasionally and five pounds frequently; must walk with a cane; cannot bend, stoop, crawl, crouch or kneel; cannot climb ladders, ropes, or scaffolds, and can only occasionally climb stairs and reach above shoulder level; cannot work around unprotected heights or moving and hazardous machinery; cannot drive motorized vehicles. Tr. 47.  Based on this hypothetical, the vocational expert testified that the person could not do the past work of Plaintiff.  *Id.*  He testified, however, that there was other work in the national economy that the person could perform: surveillance system monitor, DOT code 379.367-010, sedentary, SVP 2, unskilled, of which there are 180,000 jobs in the national economy; order clerk, DOT code 209.567-014, sedentary, SVP 2, unskilled, of which there are 65,000 jobs in the national economy; and document preparer, DOT code 249.587-018, sedentary, SVP 2, unskilled, of which there are 55,000 jobs in the national economy.  Tr. 47.  The vocational expert testified his testimony was consistent with the DOT.  Tr. 48.

On cross-examination by Plaintiff's counsel, the vocational expert testified that if the person described in the hypothetical were off task greater than 20% of the work day, in addition to regular breaks, or miss

more than two days a month due to medical problems, all jobs would be
eliminated.  Tr. 47-48.

### B. The Decision of the Administrative Law Judge

In the decision issued on August 25, 2016, the ALJ made findings
pertinent to this review.  Tr. 16-26.  Plaintiff met the insured status
requirements through December 31, 2012, and has not engaged in
substantial gainful activity since November 29, 2012, the alleged onset
date.  Tr. 18.  Plaintiff is a younger individual, age 18-44, with at least a
high school education and can communicate in English.  Tr. 25.

Based on the evidence of record, the ALJ found Plaintiff had the
severe impairment of spine disorder.  Tr. 18.  The ALJ found that Plaintiff's
medically determinable mental impairments of affective disorder and
substance addiction disorder, singly or in combination, do not cause more
than minimal limitation on Plaintiff's ability to perform basic mental work
and are, therefore, nonsevere.[5]  Tr. 18-19.  The ALJ gave significant weight
to the opinions of the State agency psychological consultants who
assessed Plaintiff's mental abilities and limitations on August 27, 2014, and
October 18, 2014, and opined that his mental impairment was not severe.
Tr. 19-20, 24 (citing records at Tr. 77-78, 91-92, 107-08, 121-22).  The ALJ

---

[5] Plaintiff does not challenge this finding.

considered the four broad functional areas set out in the disability

regulations for evaluating mental disorders, and section 12.00C of the

Listing of Impairments, and concluded that Plaintiff has no limitations in the

area of daily living—for example, he is capable of living independently, he

cares for his young child, tends to personal needs, performs some light

household chores, and goes to the park with his son.  Tr. 19.  The ALJ

found Plaintiff has no limitation in the area of social functioning or in the

area of concentration, persistence, and pace, and that he has experienced

no episodes of decompensation.  *Id.*  The ALJ also found that Plaintiff does

not have an impairment of combination of impairments that meets or

medically equals one of the listed impairments in 20 C.F.R. Part 404,

Subpart P, Appendix 1.  Tr. 20.

In determining Plaintiff's residual functional capacity (RFC),[6] the ALJ

found that Plaintiff has the RFC to perform sedentary work involving lifting

---

[6] Residual functional capacity is the most a claimant can still do despite limitations.  20 C.F.R. § 404.1545(a)(1).  It is an assessment based upon all of the relevant evidence including the claimant's description of his or her limitations, observations by treating and examining physicians or other persons, and medical records.  *Id.*  The responsibility for determining claimant's RFC lies with the ALJ.  20 C.F.R. § 404.1546(c); *see* Social Security Ruling (SSR) 96-5p, 1996 SSR LEXIS 2, at *12 (July 2, 1996) (rescinded eff. Mar. 27, 2017) ("The term '*residual functional capacity assessment*' describes an adjudicator's finding about the ability of an individual to perform work-related activities.  The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to

ten pounds occasionally and five pounds frequently, sitting 7 hours a day

for one hour at a time, standing or walking for up to 2 hours a day for 15

minutes at a time, can walk with a cane, never bend, stoop, crawl, crouch,

kneel, climb ladders or scaffolds, but can occasionally climb ramps and

stairs, occasionally reach above shoulder level, cannot work around

unprotected heights, moving and hazardous machinery, or drive motorized

vehicles.  Tr. 20.  In reaching this RFC, the ALJ acknowledged that due to

Plaintiff's spine disorder he has work-related limitations.  Tr. 21.  To support

the limitations stated in the RFC, the ALJ cited medical evidence that

showed Plaintiff had back surgery in August 2012 without reported

complications.  Tr. 21 (citing records at Tr. 358-69).  The ALJ further noted

that multiple objective diagnostic studies have not revealed disabling

abnormalities, and physical examinations have not revealed significant

functional limitations beyond those accounted for in the RFC determination.

The ALJ cited University of Florida Physicians records from June

2013 where Plaintiff reported severe lumbar pain not controlled with

ibuprofen, with bilateral radiation of pain to the bilateral lower extremities,

but physical examination found intact sensation and reflexes in the lower

---

do, and many other factors that could help the adjudicator determine the most
reasonable findings in light of all the evidence.").

extremities.  Tr. 22 (citing records at Tr. 384).  The ALJ stated, "The treating orthopedist indicated that the claimant's continued complaints of pain were disproportionate with the clinical findings.  *Id.* (citing records at 385).  In September 2013, following a fall, emergency department notes indicated that Plaintiff had some slight decrease in strength in the lower extremities due to pain, but that he ambulated with normal gait and pace with a cane.  Tr. 22 (citing records at Tr. 403-10).

The ALJ cited lumbar spine X-rays in January 2013 and April 2013 showed no evidence of hardware complications and no evidence of new fracture, subluxation, bony mass lesions, or other spinal abnormalities. Tr. 22 (citing records at Tr. 390, 430-31).  A lumbar spine MRI in July 2013 showed appropriate post-surgical changes of L5-S1 fusion with no evidence of spinal canal or neural foraminal compromise.  *Id.* (citing records at Tr. 434-35).  The ALJ further noted lumbar spine X-rays in August 2014 that showed an anterior L5-S1 fusion without complicating features.  *Id.*  (citing records at Tr. 428).

The ALJ cited a consultative examination performed in August 2014 by Robert Greenberg, M.D., which indicated some decreased range of motion of the lumbar spine and positive straight leg raising testing bilaterally at 15 degrees.  *Id.* (citing records at Tr. 423-27).  Office notes

showed that during this examination, Plaintiff walked slowly with an unsteady gait and limp, and was unable to walk without the walker. He was unable to tandem walk or walk on his heels or toes and could not stoop. He was reported to have an absence of reflex in his left leg and lack of sensation in his left thigh to foot. Left leg strength was measured at 2/5 due to severe back pain and right leg strength was measured at 3/5. *Id.* The ALJ acknowledged that Dr. Greenberg opined Plaintiff would be unable to perform any type of work-related activities that require prolonged standing, walking, lifting, bending, or sitting. *Id.* The ALJ gave great weight to this opinion and concluded that the limitations contained in the RFC accounted for these limitations. Tr. 23-24.

The ALJ also cited and gave great weight to the state agency non-examining medical consultant's opinion of October 24, 2014, that claimant is capable of a range of sedentary exertional work activity. Tr. 24 (citing records at Tr. 109-13, 122-24). The ALJ concluded that the opinion was consistent with the Plaintiff's history of and response to treatment, his uncomplicated recovery from back surgery, the results of serial musculoskeletal imaging studies, clinical observations, and results of physical examinations that failed to identify more substantial functional limitations. Tr. 24.

The ALJ noted that medical evidence reflects a gap in treatment from September 2013 to July 2016.  Tr. 22 (citing records at Tr. 398-418, 444-46).  The ALJ cited medical records from July 2016 in which physical examination indicated Plaintiff had a limp and point tenderness at L5-S1, with paraspinal tenderness of the lumbosacral region.  Tr. 22 (citing records at Tr. 444-46).  Plaintiff was unwilling to perform range of motion testing due to fear of pain.  The ALJ noted that examination of the lower extremities showed good muscle bulk in the lower legs, equal calf muscles, and 5/5 strength with some limitation on the left due to pain.  Sensation was normal, although decreased somewhat in the left foot.  Plaintiff was referred to physical therapy.

Based on the medical evidence, the ALJ found that physical examinations and diagnostic studies have not revealed disabling findings or disease significant enough to preclude all work.  Tr. 22.  The ALJ concluded that Plaintiff's treatment for his back condition has been essentially routine and conservative in nature since the alleged onset date.  The ALJ further cited lack of evidence that Plaintiff followed through with his referral to pain management services, but continued to treat with over-the-counter medications and a heating pad.  Tr. 23.  The ALJ also cited the lack of evidence showing Plaintiff seeking emergency treatment or

hospitalization for pain or other symptoms, and noted that no evidence was presented that Plaintiff sought no or low-cost treatment or that he has been denied treatment due to lack of insurance or funds.  *Id.*

The ALJ concluded, "In sum, the claimant's activities of daily living, the totality of the medical evidence of record, and the findings of the State agency suggest that the claimant can sustain a greater capacity for work than has been alleged in connection with this application."  Tr. 24.  The ALJ found that Plaintiff cannot perform his past work, Tr. 24, but that he can perform a full range of sedentary work as described by the vocational expert at the hearing.  Tr. 25-26.  Accordingly, the ALJ found that Plaintiff is not disabled and is not entitled to a period of disability and disability insurance benefits or supplemental social security income.  Tr. 26.

## II. Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles.  42 U.S.C. § 405(g); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); accord

Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). "The

Commissioner's factual findings are conclusive if supported by substantial

evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002)

(citations omitted).[7]  The Court may not decide the facts anew, reweigh the

evidence, or substitute its judgment for that of the Commissioner,

Bloodsworth, 703 F.2d at 1239, although the Court must scrutinize the

entire record, consider evidence detracting from the evidence on which the

Commissioner relied, and determine the reasonableness of the factual

findings.  Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992); Parker v.

Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986).  Review is deferential, but

the reviewing court conducts what has been referred to as "an independent

review of the record."  Flynn v. Heckler, 768 F.2d 1273, 1273 (11th Cir.

1985).

---

[7] "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it."  Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted).  "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ.  A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ."  Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.' "  Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1509 (duration requirement).[8] Both the "impairment" and the "inability" must be expected to last not less than 12 months. Barnhart v. Walton, 535 U.S. 212 (2002). An individual is entitled to disability insurance benefits if he or she is under a disability prior to the expiration of his insured status. *See* 42 U.S.C. § 423(a)(1)(A); Moore, 405 F.3d at 1211; Torres v. Sec'y of Health & Human Servs., 845 F.2d 1136, 1137-38 (1st Cir. 1988); Cruz Rivera v. Sec'y of Health & Human Servs., 818 F.2d 96, 97 (1st Cir. 1986).

---

[8] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI, but separate, parallel statutes and regulations exist for DIB and SSI claims (*see* 20 C.F.R. §§ 404, 416). Therefore, citations herein should be considered to refer to the appropriate parallel provision. The same applies to citations of statutes or regulations found in quoted court decisions.

Pursuant to 20 C.F.R. § 404.1520(a)(4)(i)-(v), the Commissioner

analyzes a claim in five steps.  Under the first step, the claimant has the

burden to show that he is not currently engaged in substantial gainful

activity.  20 C.F.R. § 404.1520(a)(4)(i).  At the second step, the claimant

must show he has a severe impairment.  20 C.F.R. § 404.1520(a)(4)(ii).

Step two is a threshold inquiry, and the ALJ does not go on to step three if

the claimant fails to meet step two, but will find claimant is "not disabled."

McDaniel v. Bowen, 800 F.2d 1026, 1032 (11th Cir. 1986); 20 C.F.R.

§ 404.1520(a)(4)(ii).  At step three, the claimant must show that his severe

impairment or combination of impairments meets or equals the criteria in

the Listings of Impairments.  20 C.F.R. § 404.1520(a)(4)(iii).  If the claimant

cannot meet or equal one of the listings, the ALJ considers at step four

whether the claimant has the residual functional capacity ("RFC") to

perform his past relevant work.  § 404.1520(a)(4)(iv).  If the claimant

establishes he cannot perform his past relevant work, the burden shifts to

the Commissioner at step five to show that significant numbers of jobs exist

in the national economy that the claimant can perform in light of his RFC,

age, education, and work experience.  20 C.F.R. §§ 404.1520(a)(4)(v),

404.1520(d), (g); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004);

Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999); McMahon v. Comm'r,

Soc. Admin., 583 F. App'x 886, 887 (11th Cir. 2014) (unpublished).  If the

Commissioner carries this burden, the claimant must prove that he or she

cannot perform the work suggested by the Commissioner.  Hale v. Bowen,

831 F.2d 1007, 1011 (11th Cir. 1987).

      Plaintiff bears the burden of proving that he is disabled and,

consequently, is responsible for producing evidence in support of his claim.

See 20 C.F.R. § 404.1512(a); Moore, 405 F.3d at 1211.  The responsibility

of weighing the medical evidence and resolving any conflicts in the record

rests with the ALJ.  See Battle v. Astrue, 243 F. App'x 514, 523 (11th Cir.

2007) (unpublished).  The opinion of the claimant's treating physician must

be accorded considerable weight by the Commissioner unless good cause

is shown to the contrary.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir.

1997); 20 C.F.R. § 404.1527(c)(2).[9]  "This requires a relationship of both

duration and frequency."  Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir.

2003).  "The Secretary must specify what weight is given to a treating

physician's opinion and any reason for giving it no weight, and failure to do

---

[9] This provision applies to claims filed before March 27, 2017.  See 20 C.F.R. § 404.1527, "Evaluating opinion evidence for claims filed before March 27, 2017."  For claims filed after that date, the applicable provision is 20 C.F.R. § 404.1520c, titled "How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017."

so is reversible error."  MacGregor v. Bowen, 786 F.2d 1050, 1053. (11th

Cir. 1986).

The ALJ may discount the treating physician's opinion if good cause

exists to do so.  Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986).

Good cause may be found when the opinion is "not bolstered by the

evidence," the evidence "supported a contrary finding," the opinion is

"conclusory or inconsistent with [the treating physician's] own medical

records," the statement "contains no [supporting] clinical data or

information," the opinion "is unsubstantiated by any clinical or laboratory

findings," or the opinion "is not accompanied by objective medical evidence

or is wholly conclusory."  Lewis, 125 F.3d at 1440; Edwards v. Sullivan, 937

F.2d 580, 583-84 (11th Cir. 1991) (citing Schnorr v. Bowen, 816 F.2d 578,

582 (11th Cir. 1987)).  Where a treating physician has merely made

conclusory statements, the ALJ may afford them such weight to the extent

they are supported by clinical or laboratory findings and are consistent with

other evidence as to a claimant's impairments.  Wheeler v. Heckler, 784

F.2d 1073, 1075 (11th Cir. 1986).  The reasons for giving little weight to the

opinion of the treating physician must be supported by substantial

evidence, Marbury v. Sullivan, 957 F.2d 837, 841 (11th Cir. 1992), and

must be clearly articulated.  Phillips, 357 F.3d at 1241.

Opinions on issues such as whether the claimant is unable to work, the claimant's RFC, and the application of vocational factors, "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of the case; *i.e.*, that would direct the determination or decision of disability."  20 C.F.R. § 404.1527(d); *see* Bell v. Bowen, 796 F.2d 1350, 1353-54 (11th Cir. 1986).  Although a claimant may provide a statement containing a treating physician's opinion of his remaining capabilities, the ALJ must evaluate such a statement in light of the other evidence presented and the ALJ must make the ultimate determination of disability. *See* 20 C.F.R. §§ 404.1512, 404.1513, 404.1527, 404.1545.

**III. Analysis**

Plaintiff's raises only two challenges to the decision of the ALJ in this case: that the hearing lasted only 19 minutes, which he argues violated due process, and that the ALJ should have questioned Plaintiff in more detail concerning the length of time he could sit, stand, and walk, at one time, over the course of a workday without additional breaks.  ECF No. 14 at 22, 23, 27.

In addition to the other functional limitations included in the RFC, the ALJ found that Plaintiff could sit for seven hours a day, for one hour at a

time, and that he could stand or walk up to two hours a day, for fifteen minutes at a time.  Tr. 20.  At the hearing, Plaintiff was questioned about his ability to sit, stand, and walk.  He testified, and the ALJ found, that he needs an assistive device for walking.  Plaintiff was asked "[h]ow long do you think you can stand or walk . . . at one time before you have to sit down or change positions?"  Tr. 41.  He testified he could stand up and walk around for 20 minutes.  *Id.*  He testified he "could sit fine as long as I'm sitting straight up.  That's the purpose of me having my back brace, which my doctor ordered for me and gave me."  *Id.*  He testified that when at home, his most comfortable position is sitting up.  Tr. 42.  The questions were asked by Plaintiff's counsel, but provided information the ALJ needed to help determine any limitations in Plaintiff's ability to continuously sit, stand, and walk during a workday.

Plaintiff argues that if Plaintiff were asked, and if he testified he could not perform any of those activities for 2 hours, the ALJ should have inquired further into what preclude the ability to do those activities for two hours.  ECF No. 14 at 22-23.  However, Plaintiff specifically testified that he could stand and walk for up to 20 minutes at one time.  The ALJ determined in the RFC, not that Plaintiff could stand and walk for two hours at one time, but that Plaintiff's standing and walking limitation was up to 15

minutes at one time.  Plaintiff was also given the opportunity to state any

sitting limitations, but did not do so, testifying instead that he could sit "fine"

if he sat up straight.  Finally, his counsel asked him if there were any other

"symptoms or limitations that you have that I haven't asked you about that

you want to tell the judge today - - about today?"  Tr. 44.  Plaintiff

responded by mentioning problems with his hand and the fact that he had

not completed therapy.  Tr. 44-45.  He also testified fully about his medical

history, his pain and medications, his daily activities, and what he viewed to

be his functional limitations.

     The RFC limitations on standing, walking, and sitting determined by

the ALJ are in accord with the Plaintiff's testimony and not contrary to any

medical evidence in the record.  Further questioning by the ALJ was not

required to elicit testimony concerning what precludes Plaintiff from walking

for two hours at a time or sitting for seven hours at a time—that was not the

testimony and that was not the finding of the ALJ in the RFC determination.

Moreover, Plaintiff has not identified any medical records or other evidence

that would indicate he cannot stand and walk for two hours in a workday in

increments of 15 minutes at a time or sit for seven hours in a workday in

increments of one hour at a time.

Plaintiff was represented by counsel at the hearing, but whether or not the claimant is represented, the ALJ has a duty to develop a full and fair record.[10] Brown v. Shalala, 44 F.3d 931, 934 (11th Cir. 1995). However, the ALJ is not required to develop additional facts or evidence unless the record demonstrates that additional facts or evidence are necessary to enable the ALJ to render an informed decision. *See, e.g.,* Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1269 (11th Cir. 2007); Doughty v. Apfel, 245 F.3d 1274, 1281 (11th Cir. 2001); Holliday v. Bowen, 848 F.2d 1206, 1210 (11th Cir. 1988). There has been no showing that the ALJ did not have sufficient facts and medical evidence before him to enable him to make an informed decision. No "gaps which result in unfairness or 'clear prejudice' " have been identified. *See* Brown, 44 F.3d at 935 (quoting Smith v. Schweiker, 677 F.2d 826, 830 (11th Cir. 1982)). Moreover, the claimant has the burden to prove he is disabled, and must demonstrate prejudice before the Court will conclude his due process rights have been violated. *See* Pennington v. Comm'r of Soc. Sec., 652 F. App'x 862, 871 (11th Cir. 2016) (unpublished). To demonstrate prejudice, Plaintiff must show that the ALJ did not have all the relevant evidence or consider all the

---

[10] The ALJ has a heightened duty when the claimant is unrepresented. Brown v. Shalala, 44 F.3d 931, 934-35 (11th Cir. 1995).

evidence in reaching the decision.  Kelly v. Heckler, 761 F. 2d 1538, 1540 (11th Cir. 1985); Pennington, 652 F. App'x at 872.

As noted above, Plaintiff also raises a due process challenge based on the short duration of the hearing.  Due process requires the opportunity to be heard in a meaningful time and manner.  Martz v. Comm'r, Soc. Sec. Admin., 649 F. App'x 948, 962 (11th Cir. 2016) (unpublished).  Plaintiff has not demonstrated that a nineteen-minute hearing is a per se violation of due process, or that it was a violation of due process in light of the facts and circumstances of this case.  *See, e.g.*, Kelly, 761 F. 2d at 1539 (twelve-minute hearing, although brief and questioning was superficial, does not establish a violation of due process without showing of prejudice, *i.e.*, that ALJ did not have all the relevant evidence).  The record demonstrates that the ALJ had sufficient evidence to make an informed decision; and Plaintiff has not shown that the ALJ had a duty to make additional inquiries into how long Plaintiff could stand, walk, or sit before needing a break or to change positions in order to reach an informed decision.

Plaintiff was provided a hearing at which he was represented by counsel.  He was questioned specifically about his ability to stand, walk, and sit for given lengths of time.  He was provided an open-ended opportunity, on several occasions, to testify concerning all his symptoms

and limitations.  The ALJ had Plaintiff's medical record, which was cited extensively in the decision.  The stand, walk, and sit limitations contained in the RFC are in accord with Plaintiff's testimony at the hearing and with the medical records and diagnostic testing results.  A remand for additional evidence or hearing is not required.

## IV. Conclusion

Considering the record as a whole, the decision of the Administrative Law Judge is supported by substantial evidence in the record and application of the proper legal standards.  Accordingly, the decision of the Commissioner to deny Plaintiff's application for a period of disability and disability benefits and for supplemental security benefits should be **AFFIRMED** and Judgment entered for Defendant.

**IN CHAMBERS** at Tallahassee, Florida, on June 11, 2018.


                    s/  Charles A. Stampelos
                    **CHARLES A. STAMPELOS**
                    **UNITED STATES MAGISTRATE JUDGE**



## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections**

within fourteen (14) days after being served with a copy thereof.  **Fed. R. Civ. P. 72(b)(2).  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control</u>.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**